**LOUSTALOT et al. v. NEW ORLEANS CITY PARK IMPROVEMENT ASS'N et al.***

No. 15037.

Court of Appeal of Louisiana. Orleans.

Nov. 18, 1935.

---

*Rehearing denied Aug. 16, 1935.

184

Spearing & McClendon and McCabe & Schmidt, all of New Orleans, for appellants.

Rene A. Viosca and Miller, Bloch & Martin, all of New Orleans, for appellees.

McCALL, Judge ad hoc.

Mr. and Mrs. Walter W. Delle sue in tort for personal injuries sustained by their minor child, Lorraine Marie, and for expenses incurred by them in connection therewith, the defendants being the New Orleans City Park Improvement Association and the London Lancashire Indemnity Company of America, its insurance carrier. In substance, the petition sets up that the city park association conducted, on May 1, 1932, an annual opening day May festival and extended an invitation to the public in general to come to the park and participate in the festivities, which would include various events, displays, and attractions. Among these was a balloon ascension; and plaintiffs, with their minor child, were in the crowd of spectators watching this event. A large pole, used by the representatives of the said association in an upright position in connection with the said balloon ascension, fell into the crowd of spectators and caused the injuries to plaintiffs' minor child for which the present suit is brought. It is specifically charged that the association, in conducting the festival, was acting pursuant to and by virtue of the purposes for which it was formed. Various acts of negligence on the part of the said association are set up and it is alleged that under Act No. 55 of 1930 plaintiffs are entitled to bring a direct action against the insurance carrier.

The trial court maintained an exception of no cause of action and dismissed the suit. From that judgment, the present appeal is taken.

Act No. 130 of 1896 in section 3 provides that the duty of the New Orleans City Park Improvement Association shall be to take charge and supervision of city park, in which the accident in question occurred, in its preservation and improvement for public recreation with a view to its gradual improvement and ornamentation as a place of resort and pleasure for the citizens of New Orleans.

The association was and is an arm of the city of New Orleans. It is, however, well recognized that the powers and obligations of a municipal corporation are of a twofold character: (1) Those that are of a public nature, and (2) those that are of a private nature, and that, while a municipal corporation cannot be held in tort for damages resulting from its activities of a public nature, it can be held in tort for damages resulting from its activities of a private nature, that is, for financial gain. Solomon v. City of New Orleans, 156 La. 629, 101 So. 1; Hall v. City of Shreveport, 157 La. 589, 102 So. 680; Rome v. London & Lancashire Indemnity Co., 181 La. 630, 160 So. 121, 122.

The Rome Case, just mentioned, was a tort action for the drowning of a boy in the city park swimming pool, and the Supreme Court held that a cause of action was stated against the insurance carrier because the petition alleged:

"That the pool was being operated by the association as a proprietary function, for profit, and in the same manner as other private swimming pools were being operated in the city of New Orleans; that a fee of 25 cents was charged to those who used the pool; and that it was through the negligence of the association's employees that the boy drowned."

In so holding, the Supreme Court expressly stated that it followed the reasoning contained in the opinion of this

court in Rome v. London & Lancashire Indemnity Company, 156 So. 64.

The history of that case was that the district court maintained an exception of no cause of action on the ground that the defendant association was engaged in a municipal function for which there could be no tort liability. In the opinion of this court, above mentioned, we concluded that since a fee of 25 cents was charged for the swimming privilege, the particular function was one for profit rather than one of a general welfare character, and that, therefore, a cause of action was set forth and the case should be remanded. A rehearing was granted, and, on reconsideration, we arrived at the conclusion that:

"The association could not do otherwise than conduct the said park in a governmental and not in a proprietary capacity, and since it could not conduct in the said park any private business, and since it is required to apply all revenues to the conduct of the said park and the maintenance of the facilities therein contained, it follows that there can be no liability ex delicto for loss or damage resulting from its said operations.

"It follows that the exception of no cause of action, which was sustained below, is well founded." 157 So. 175, 176.

On review, the Supreme Court adopted as correct our original opinion. Among the authorities on which that original opinion purported to rest was Alder v. Salt Lake City, 64 Utah, 568, 231 P. 1102, as to which we said at page 69 of our first opinion (156 So. 64):

"The suit was for damages for personal injuries alleged to have been sustained by the plaintiff at a public park owned and operated by the city, which had staged a Fourth of July pageant; the public being admitted without charge. The stand in which the plaintiff was seated gave way, and it was alleged that the city was at fault in negligently constructing it. The defense was that defendant's employees were engaged in a governmental function. In sustaining the demurrer and dismissing the suit, after having referred to a number of authorities supporting both views, the court said:

" 'The maintenance of the public park and the presentation of the pageant on the 4th of July by the defendant city were clearly matters of public service for the general and common good, designed exclusively for the social advantage, entertainment, and pleasure of the general public; and from which the city could derive no benefit in its corporate or proprietary capacity.' "

It is very difficult to see any distinction between an action against a city for injuries sustained at a Fourth of July pageant held at a park, caused by the collapsing of a grand stand, and an action against a park association for injuries sustained at a May first pageant resulting from the falling of a pole during the course of a balloon ascension.

In the Rome Case a cause of action was found to exist solely because of the fact that, by virtue of making a charge for the swimming privilege, the park association was acting in a proprietary rather than a governmental capacity. There is no allegation in the present case that any charge was made to the plaintiffs or any one else for the privilege of witnessing the balloon ascension. The entire May 1st festival, including the balloon ascension, was, so far as appears from the petition, a free affair intended for the amusement and recreation of the general public without any financial gain to the park association.

The only difficulty which we have in reaching the conclusion that the present case is in no wise controlled by the result reached in the Rome Case lies in the concurring opinion of the Chief Justice in that case, which reads as follows:

"I consider it a sufficient answer to the plea which is set up in defense of this suit that the suit is brought against the insurer alone. The suit is brought on a policy of insurance against loss by reason of liability imposed upon the insured for damages on account of bodily injury or death suffered by any person not employed by the insured, and as a result of any accident. Act No. 253 of 1918, as amended by Act No. 55 of 1930, p. 122, provides that such a suit may be brought either against the insurer alone or against both the insurer and the insured jointly and in solido. The general rule that a municipal corporation is not liable for personal injuries caused by the fault or negligence of an agent of the municipality engaged in a public function is founded upon a theory which is not at all applicable to a suit against an insurer on a liability insurance policy, where no liability is sought to be

or can be imposed upon the public. To argue that, under the statute, this suit is subject to 'the defenses which could be urged by the insurer to a direct action brought by the insured,' would be begging the question. As far as the allegations of the petition go, it appears that the very purpose of such insurance is to relieve the municipality, or municipal agency, and hence the public, of liability in such cases." 181 La. 630, 634, 160 So. 121, 122.

As an intermediate court, we are fortunate in having the rulings of the court of last resort to guide us in the right direction, but we take it that the meaning and intention of a decision is to be found in the majority opinion of the court, rather than in the separate views of one of the members of the court expressed in a concurring opinion, and that our duty in case of doubt is to follow the views of the majority opinion, which in the present instance was concurred in by all of the members of the court, except Mr. Justice Higgins, who, on account of the fact that he was the organ of this court handing down the original opinion in the Rome Case, was necessarily recused when that case was considered by the Supreme Court.

We cannot conceive of a municipality or any one else taking out insurance of the character under consideration to a greater extent than its own liability can go. In our humble judgment the purpose of Act No. 55 of 1930 was primarily to confer on an injured person the privilege of bringing a direct action against the insurance carrier of the person causing the injuries, but it was not intended to make the insurance carrier liable for causes of action for which the person at fault would not himself be liable. Our belief in this regard is based on the language in the last paragraph of the act to the effect that it is:

"The intent of this act that any action brought hereunder shall be subject to all of the lawful conditions of the policy contract and the defenses which could be urged by the insurer to a direct action brought by the insured."

We have not overlooked the decision of the Supreme Court in Edwards v. Royal Indemnity Co., 182 La. 171, 161 So. 191, to the effect that while a woman cannot bring a tort action against her husband for injuries sustained by her through his fault before they were married, she can none the less hold his insurance carrier liable. Mr. Chief Justice O'Neill said of that case, in discussing it during the course of the opinion in Ruiz v. Clancy, 182 La. 935, 162 So. 734, 738:

"The purport of the decision was that the abatement of Miss Palmer's right of action against Edwards, by effect of her marrying him, was a matter which did not concern the insurance company, because the abatement of the action against Edwards had nothing to do with the merits of the claim of Miss Palmer, or Mrs. Edwards, against either Edwards or the insurance company. The incapacity of the woman to prosecute the suit against Edwards was only a relative incapacity on her part, or relative immunity on his part, and did not affect the rights of the insurance company any more than it would have affected the rights of the insurance company if Miss Palmer had merely refused to sue Edwards, and had not married him."

We submit that whereas in the Edwards Case there could be no doubt that on the happening of the accident, the plaintiff had a cause of action against the defendant and his insurance carrier as well by virtue of Act No. 55 of 1930, her inability to proceed against the defendant after she married him was in the nature of a bar to the suit rather than a destruction of the cause of action, while in the instant case no cause of action ever came into existence against the park association, and its immunity was therefore not relative but absolute, so that its insurance carrier could properly plead the benefit of that immunity.

The situation in this regard is highly similar to the well understood difference between the ordinary statute of limitations, on the one hand, which simply bars the exercise of the remedy, and, on the other hand, the statute of limitations, which is part of the act creating the right, so that after the period named the right no longer exists; as, for example, our death statute (Act No. 247 of 1920) and the Federal Employers' Liability Act (45 USCA §§ 51–59).

We are therefore of the opinion that the present case is not governed by the result reached in the Rome Case, and that, ac-

cordingly, the district court was right in maintaining the exception of no cause of action and dismissing the suit against both defendants.

Judgment affirmed.

McCALL, Judge ad hoc, participating in absence of LECHE, Judge.