**PETRICH et ux. v. NEW ORLEANS CITY PARK IMPROVEMENT ASS'N et al.**

No. 16992.

Court of Appeal of Louisiana. Orleans.

April 24, 1939.

Rehearing Denied May 22, 1939.

Writ of Certiorari Denied June 26, 1939.

Paul E. Chasez and Sydney J. Parlongue, both of New Orleans, for appellants.

Rene A. Viosca and Miller, Bloch & Martin, all of New Orleans, for appellees.

JANVIER, Judge.

This is a suit for damages. Mrs. Ellis J. Petrich, while taking a golf lesson on the course of the New Orleans City Park Improvement Association in the City Park in New Orleans, received physical injuries as the result of being struck by a golf ball driven from a nearby tee by another golfer. She and her husband allege that the golf professional, Wilfred Roux, from whom, at the time, she was taking a golf lesson, was negligent in placing her in a dangerous position on the fairway of the golf course—about 15 yards in front of a tee. They charge that the said Roux was "an agent, servant and employee" of the said Association and that at the time he was acting within the scope of his employment, and they also allege that, in operating the said golf course and in employing the said Roux, the said Association acted in a proprietary and not in a governmental capacity and they charge that the said Roux and the said Association are both responsible for the results of the said alleged negligence of Roux.

They also allege that the London & Lancashire Indemnity Company of America had issued to the said Association a policy of liability insurance under which the said company agreed to indemnify and hold harmless the said Association against loss resulting from any such possible liability as is sought to be asserted here, and they aver that, as a result of the provisions of Act 55

of 1930, the said Indemnity Company is liable directly to them for such loss as they may have sustained.

Mrs. Petrich claims $10,000 for pain and suffering and loss of sight and Mr. Petrich seeks judgment for $220 as the expense to which he, as head and master of the community, has been put as a result of the injuries sustained by Mrs. Petrich.

Defendant, Roux, made no appearance, and judgment was rendered against him by default in favor of Mrs. Petrich in the sum of $3,500 and in favor of Mr. Petrich in the sum of $220. He has not appealed.

The defenses presented by the two other defendants are:

(1) That Roux, in giving lessons to Mrs. Petrich, was not the agent or employe of the Association and acted entirely as an independent contractor, for whose actions neither of defendants is liable;

(2) That plaintiff, Mrs. Petrich, was thoroughly familiar with the game of golf, was aware of the danger of being struck by a ball driven by another player, and well knew that she was in a position of danger, should some other player carelessly strike a ball in her direction;

(3) That the proximate cause of Mrs. Petrich's injury was not the fact that Roux placed her in a position of danger, but was the intervening negligence of the other player, who, without warning, drove his golf ball directly at her in violation of the usual custom of the game and contrary to all of the dictates of caution, prudence and common sense;

(4) That, in selecting Roux as the golf professional from whom players might secure lessons, the Association had fully complied with its duty by exercising due care to ascertain that he was a careful and experienced professional and understood the possible danger to players who might employ him;

(5) That, in its conduct of the golf course, the said Association acted solely as the agent of the State of Louisiana and in a governmental capacity, and that, therefore, even had Roux been its employe, instead of an independent contractor, there would have been nò liability.

In addition to the above defenses, the insurer presents the contention that in any event, it cannot be held liable because even Act No. 55 of 1930 makes the insurer liable only within the terms, limits and conditions of the policy, and the policy here provides, in a special rider, that the insurer is not liable " * * * for injuries or death to any person or persons resulting from the participation in games or contests * * * ".

There was judgment in favor of both these defendants and plaintiffs have appealed.

For the moment we shall indulge the rather violent assumption that, in conducting the golf course and in contracting with Roux to serve as professional, the Association acted in a proprietary capacity. If it did not do so, it cannot itself be held liable, but, if it did do so, then in a case in which the facts show negligence it is possible that the insurer may be held liable (Rome v. London & Lancashire Indemnity Company, La.App., 156 So. 64; Id., La.App., 157 So. 175; Id., 181 La. 630, 160 So. 121; Id., La. App., 169 So. 132), and, since there are other defenses which we think are entirely sound and which will result in a dismissal of the suit as to both defendants, we will, as we have said, temporarily indulge the presumption that the Association acted in a proprietary capacity and discuss these other defenses.

The record shows that Mrs. Petrich, under the instruction of Roux, was standing directly in front of tee No. 11, about 15 yards from it, and that, therefore, she was in the direct line of flight of any ball properly driven from that tee toward the green. The record also shows that, among golf players, there is a universally recognized custom, with which Mrs. Petrich was familiar, to give warning to those who may be near the line of flight of the ball by shouting the word "fore" and then affording sufficient time for them to step to one side far enough to avoid danger. In view of this universally recognized custom, it was to be expected that no golf player would strike a ball from the nearby tee without first giving warning and, therefore, while it might have been safer for Roux to have selected some other spot for practice, he was justified in assuming that both he and his pupil would be afforded an opportunity to seek safety, and that no golfer would, without warning, propel his ball suddenly and directly at them. Therefore, since the accident resulted from the totally unexpected and unforeseen negligence of the intervening party—the other golfer—it cannot be said that the initial negligence of Roux in placing Mrs. Petrich in that position had, in reality, causal connection with the accident.

In 45 Corpus Juris, page 931-32 (Negligence), appears the following: "A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated and efficient cause of the injury, even though such injury would not have happened but for such condition or occasion."

In Lee v. Powell Bros. & Sanders Company, 126 La. 51, 52 So. 214, 216, the Supreme Court said: "For severing the legal connection between the negligence by which such an imminent danger was created and the injury that has resulted from it the intervening voluntary act of some person responsible for his acts would have to be shown."

In Mire v. East Louisiana R. Co., 42 La. Ann. 385, 7 So. 473, we find the principle stated as follows: "In case the proof shows that the accident would not, in all likelihood, have happened, but for the interposition of some independent responsible third party between the servant's negligence and the injury sustained, and it affects the result, and is the immediate cause of the injury, the plaintiff cannot recover against the original wrong-doer." (Syllabus) See, also, Moore v. Jefferson Distilling & Denaturing Company, 169 La. 1156, 126 So. 691.

█ In considering the doctrine that the original negligence is not the proximate cause where there is a totally unexpected act of an intervening third party, we note that the doctrine is particularly applicable where the intervening act is intentional on the part of the intervening third actor. Here the ball was intentionally struck directly into the direction of Mrs. Petrich. We do not say that the other golfer intended to strike her. But he did intend to take the chance, relying on his skill to avoid her.

Had Mrs. Petrich been standing to one side and had the ball been struck improperly—as not infrequently occurs—it might then have been said that such a result would have been within the contemplation of Roux. But surely it cannot be said that he should have foreseen that any golfer would hit his ball directly at another golfer immediately in front of him and only a very short distance away.

"The law will not look back from the injurious consequences beyond the last efficient cause, especially where an intelligent and responsible human being has intervened." 45 Corpus Juris (Negligence), sec. 489, pages 928-29.

█ But, even if we could consider that the act of Roux constituted one of the concurrent causes of the accident, we think that no liability would result in the Association because the record shows that, in giving lessons to golfers, Roux acted not as an employe of the defendant Association, but entirely as an independent contractor. The Association had no control whatever over his actions. He selected the place where his pupils should practice and he was in no manner controlled by the Association in his rendering of various services under his contract with golf players. He retained all fees collected by him. While it is true that the Association might be considered the employer or master of Roux with reference to those duties which he was under obligation to perform for it, —such as keeping up the grounds, et cetera —he was not its employe so far as the giving of lessons was concerned.

"The act of a servant done to effect some independent purpose of his own and not with reference to the service in which he is employed, or while he is acting as his own master for the time being, is not within the scope of his employment so as to render the master liable therefor. In these circumstances, the servant alone is liable for the injury inflicted." 39 Corpus Juris (Master & Servant), sec. 1490, page 1295.

█ Nor do we think that there was any negligence in the Association itself in permitting golfers to play over the course while others were practicing thereon. As we have already found, the universally recognized custom and rule required each golfer to give warning before driving a ball into the direction of someone else on the course, and the Association was justified in assuming that each golfer would recognize and obey this custom. Were a golf course operator not justified in assuming that all golfers would comply with this rule, there might be liability in permitting more than one golfer to play on any one course at one time.

This view is not in conflict with what we said nor with the conclusion reached by us in Brooks v. Bass et al., La.App., 184 So. 222. There we merely held that if, in the making of major repairs to a golf course, it

is necessary to require a large number of workmen to congregate in any one place sufficiently near to the line of play to justify the fear that some of them may be struck, it may be negligence to permit that part of a course to be played since it would be obviously absurd to require each golfer, before making a shot, to wait until so large a number of employes had removed themselves from all possible danger. What we said there has no application to individual golfers located here and there over a golf course because each of them should receive warning and should, on receiving it, remove himself promptly to a position of safety.

There would be no liability in the insurer here even if we could hold that the Association, in operating the golf course, acted in a proprietary capacity, even if we could hold that it was also the employer of Roux with regard to the giving of lessons and even if we felt that Roux's negligence was the proximate cause of Mrs. Petrich's injuries; and this ultimate reason, which would exempt the insurer from liability, is that the policy itself, by its own terms, excluded coverage for liability for accident sustained by persons participating in games or contests.

Plaintiffs declare that Mrs. Petrich was not playing golf, but was only practicing, and that, therefore, the exclusion just referred to did not apply. Counsel assert that one does not "participate" except with others; that the word "participate" means "to share in common with others", and that, therefore, one who practices alone does not participate. But we think that a person who practices golf strokes on a golf course is participating in a game of golf within the contemplation of the policy. Golf is a game in which no companion or opponent is required. One may "participate" in a game of golf alone. As stated by counsel for defendant, "golf consists of striking a ball with a club to get a desired direction and distance". That is exactly what Mrs. Petrich was doing. That she was not walking from hole to hole, but was making all of her shots in one place, we deem of no importance. She was playing golf and, therefore, the insurer assumed no liability for injuries sustained by her while so doing.

For all of these reasons, there is no liability in either the New Orleans City Park Improvement Association, nor in the insurer.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be and it is affirmed at the cost of appellants.

Affirmed.